UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



------------------------------------------------------------ X

ALMA DIANE GRAY,                                    :        03 CV 5364 (ARR)
                                                    :
                        Plaintiff,                  :        <u>NOT FOR ELECTRONIC</u>
                                                    :        <u>OR PRINT</u>
            -against-                               :        <u>PUBLICATION</u>
                                                    :
MICHAEL CHERTOFF, Secretary U.S. Department of      :        <u>OPINION AND ORDER</u>
Homeland Security                                   :
                                                    :
                        Defendant.                  :
                                                    :
------------------------------------------------------------ X

ROSS, United States District Judge:

Plaintiff Alma Diane Gray ("plaintiff" or "Gray"), who is represented by counsel, has

brought the instant action against defendant Michael Chertoff, Secretary of the United States

Department of Homeland Security ("defendant")[1], alleging violations of Title VII of the Civil

Rights Act of 1964, codified at 42 U.S.C. § 2000e-5 <u>et seq.</u> Specifically, plaintiff asserts claims

of race and gender discrimination and retaliation in violation of Title VII.[2] Presently before the

---

[1] Plaintiff was employed as an Immigration Inspector with the Immigration and Naturalization Service ("INS"). The duties of the INS have since been transferred to the Department of Homeland Security. For the purpose of this opinion, the defendant will also be referred to as the INS.

[2] In her complaint, plaintiff also raises a claim of discrimination on the basis of disability. However, plaintiff brought this action under Title VII, which does not provide for a cause of action for discrimination based on disability. <u>See</u> 42 U.S.C. § 2000e-16(a). Moreover, in her opposition papers, plaintiff does not contest defendant's motion for summary judgment on plaintiff's disability claim. Given that plaintiff failed to bring her disability discrimination claim under the proper statute and apparently concedes this point, the court grants defendant's motion for summary judgment with respect to the disability claim. Accordingly, to the extent that plaintiff raises a disability discrimination claim, such a claim is dismissed.

1

court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND

The following facts are undisputed unless otherwise indicated.[3] Plaintiff, a 46-year-old African-American female, became employed with the Immigration and Naturalization Service ("INS") in 1980 as a clerk typist. (Def. Rule 56.1 Stmt. ¶ 1.) In 1997, plaintiff was promoted in 1987 to the position of Immigration Inspector. (Id. ¶ 2.) Plaintiff was assigned to John F. Kennedy Airport ("JFK Airport"), where, according to defendant, she was responsible for policing the borders of the United States. (Id. ¶ 3.) She continued to work for the INS, in some capacity, until she was terminated on July 31, 2002. (See id. ¶ 42.)

### A. Prior Hostile Work Environment and Retaliation Claims

On September 28, 1995, plaintiff was sexually assaulted by one of her supervisors. (See Def. Rule 56.1 Stmt. ¶ 4.) The incident was reported to plaintiff's other supervisors, including John Mirandona, and to the Queens District Attorney's office. (See Def. Rule 56.1 Stmt. ¶ 4; Def. Ex. C at 3, "EEOC Final Decision on 1996 Complaint.") Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") on February 8, 1996, alleging that she had been sexually assaulted on the job. (Def. Rule 56.1 Stmt. ¶ 4.) Following the complaint, the

---

[3] Defendant argues that plaintiff has failed to submit a statement of undisputed facts pursuant to Local Civil Rule 56.1 and, thus, defendant's Rule 56.1 statement should be accepted as the undisputed statements of facts in this case. To the extent that it is supported by the record, the court construes plaintiff's submission marked "Sworn Declaration of Alma Diane Gray in Opposition to Defendant's Declaration of Undisputed Facts" as a statement of undisputed facts pursuant to Local Civil Rule 56.1.

EEOC issued a decision dated July 8, 1999 holding the INS liable for a hostile work environment due to its untimely response and awarded plaintiff $18,650 in damages and $14,425 in attorney's fees by decision dated April 30, 2001. (Id. ¶¶ 5, 6.) The opinion, among other things, stated that JFK Airport's Port Director, John Mirandona, had not responded in a timely fashion to plaintiff's complaint and falsely represented his administrative actions as "immediate." (EEOC Final Decision on 1996 Complaint at 7.)

In March 1998, the INS suspended plaintiff without pay for fifteen days on the basis that plaintiff had been repeatedly absent in 1996. (See Def. Rule 56.1 Stmt. ¶ 8.) According to plaintiff, any absences were either due to illness or appointments that she had made the INS aware of, or episodes of post-traumatic stress syndrome stemming from her sexual harassment case. (Def. Ex. A at 30-33, "Pl. Dep.") On March 15, 1998, plaintiff filed another EEO claim, alleging that she had been suspended in retaliation for her successful sexual harassment claim. (Def. Rule 56.1 Stmt. ¶ 8.) Plaintiff's claim was denied by the Department of Justice. (Id. ¶ 9.) Plaintiff appealed this decision to the EEOC, and the EEOC affirmed the denial on July 12, 2001. (Id. ¶ 10.)

## B. Plaintiff's Performance Rating and Application for a Promotion

In June 2000, plaintiff requested that she receive an Officer Corps Rating System ("OCORS") evaluation and subsequently applied for a promotion to Supervisory Immigration Inspector for the Bahamas. (Def. Rule 56.1 Stmt. ¶¶ 13, 18-19.) Defendant describes OCORS as a method to rate employees applying for Officer Corps positions that are announced on a yearly basis. (Id. ¶ 15.) The plaintiff received a score of "highly recommended" from Kay Bonadie, her supervisor, and a score of "recommended" from Phillip Austin, her second line supervisor at

3

the time. (Id. ¶ 13.) Plaintiff did not receive the promotion and filed an EEO claim in October 2000 on the grounds that Austin gave her a low evaluation in retaliation for her prior protected activity. (See Pl. Rule 56.1 Stmt. ¶¶ 19-22.) According to the INS, the OCORS score would not have made any difference in plaintiff's promotion because the application process for the job for which she applied was not an officer corps position and, thus, did not require an OCORS score. (Def. Rule 56.1 Stmt. ¶ 16.) This EEO complaint was suspended because the EEOC deemed the action to be a part of this civil matter. (Id. ¶¶ 55-56.)

## C.     Plaintiff's Drug Test

The INS instituted a drug-free workplace program in 1986, pursuant to Executive Order 12564, because its agents are involved in a field with exposure to narcotics and therefore susceptible to bribes or lapses in judgment. (Def. Rule 56.1 Stmt. ¶¶ 43-44.) As part of this initiative, the INS implements a random drug testing procedure for agents who are in "Testing Designated Positions" ("TDPs"). (Id. ¶ 45.) In April 2001, plaintiff's social security number was drawn randomly from a computer, with approximately fifty other TDP employees. (Id. ¶ 48.) On May 14, 2001, plaintiff was subjected to a random urinary drug test pursuant to the INS's drug-free workplace policy. (Pl. Rule 56.1 Stmt. ¶ 2.)

According to the INS's drug policy, in case of any need for clarity, the Health and Human Services ("HHS") policy acts as a guideline for drug testing policies and procedures. (See Def. Supp. Ex. LL at 1, "HHS Mandatory Guidelines for Federal Workplace Drug Testing Programs.") The HHS policy, in pertinent part, provides that the Medical Review Officer ("MRO") is the only individual permitted to relay the results to the specimen donor and that he may do so either orally or in writing. (Id. at 12, 33-34.) The policy also requires that the MRO

4

honor a donee's request for the second half of a split specimen to be tested, if the request is made within seventy-two hours of the donor's receipt of notice that she tested positive. (Id. at 24.) In addition, the policy mandates that all chain of custody forms be filled out correctly to certify that the sample has not been tampered with. (Id. at 21.) The samples must be kept for at least one year before being destroyed, but if the sample is under legal challenge then it must be kept indefinitely. (Id. at 30.)

Plaintiff's urine sample was tested twice by Northwest Toxicology Laboratories, and the pre-screening and screening were both positive for cocaine metabolite. (Def. Rule 56.1 Stmt. ¶¶ 24-28.) Plaintiff was informed orally by the MRO that her sample tested positive for cocaine metabolite on May 24, 2001 and received written notification of her failed test from the INS on June 1, 2001. (Id. ¶¶ 28, 31.) According to plaintiff, however, she was never told of her option to retest the sample. (Pl. Rule 56.1 Stmt. ¶ 4.) According to defendant, the MRO notified plaintiff of her option to request a split within seventy-two hours of notification of the result. (Def. Rule 56.1 Stmt. ¶ 28.)

In addition, according to plaintiff, the testing facility did not seal the specimen in front of plaintiff as mandated by the HHS policy. (Pl. Rule 56.1 Stmt. ¶ 9.) Furthermore, plaintiff claims that her initials are not on the chain of custody forms where the donor's initials are required to verify that she was present when the sample was sealed as required by the HHS policy. (Id.) Defendant contests plaintiff's claim and has offered for evidence a document, signed by plaintiff, stating that she had been present when the specimen was sealed. (See Def. Rule 56.1 Stmt. ¶ 23.) It is undisputed, however, that the specimen was destroyed on August 14, 2002. (Def. Ex. N at 5546, "Northwest Toxicology Urinalysis Drug Testing Report.") It was destroyed after

plaintiff's attorney notified Mary Ann Gantner, Deputy District Director of the INS's New York

District Office, of her client's desire to contest the validity of the test results. (Pl. Rule 56.1

Stmt. ¶ 11.)

## D.    The Consequences of Plaintiff's Drug Test Results

On June 1, 2001, plaintiff received a letter from the INS notifying her of her positive drug

test results and explaining that she was being referred to the Employee Assistance Program

("EAP") for assessment. (Def. Rule 56.1 Stmt. ¶¶ 31, 33.) Plaintiff was told at this time that her

non-participation in the EAP, which included drug rehabilitation, would be cause for her

removal. (Pl. Rule 56.1 Stmt. ¶ 6.) She was also warned that even if she did fully participate

with the EAP she could still be removed for the positive drug test. (See Def. Ex. P at 1,

"Notification of Drug Test Result Dated June 1, 2001.") In addition, defendant notified plaintiff

that she was demoted to a "non-security" position and that her security credentials would be

removed. (Id.)

Plaintiff chose to cooperate with the EAP and entered into the Second Wind program for

substance abuse on June 14, 2001. (Def. Rule 56.1 Stmt. ¶ 34.) As a part of the drug treatment

program, plaintiff indicated that she had used cocaine recently and that she was suffering from

mental disturbances relating from the sexual abuse and inequality at her work place. (See id. ¶

35.) Shortly after plaintiff began participating in the rehabilitation program, several of plaintiff's

superiors, including Mirandona, wrote a letter to Charles Troy, Assistant District Director of the

INS's New York District Office, recommending disciplinary action against plaintiff for violating

the INS's drug-free workplace program. (Def. Ex. R at 8-9, "Letter Recommending Disciplinary

Action Dated July 24, 2001.")

Plaintiff continued at Second Wind until she had successfully completed the program on October 1, 2001. (See Def. Rule 56.1 Stmt. ¶ 34; Pl. Ex. 5 at 2, "Second Wind Letter to Mirandona Dated Nov. 16, 2001.") During her treatment period, plaintiff was required to take scheduled drug tests to prove that she was remaining drug free. (See Second Wind Letter to Mirandona Dated Nov. 16, 2001.) Plaintiff never failed a urine test at Second Wind. (Id.) Mirandona was notified of plaintiff's negative drug tests on November 16, 2001. (Id.)

On December 4, 2001, Mirandona spoke to plaintiff in a degrading manner, telling her that she "might save [her] job, but [she is] never coming back to [her position in] Inspections." (See Def. Ex. HH at 1, "Acceptance of Plaintiff's Amendments to Mar. 12, 2002 EEO Complaint.") On that same day, in a letter to an INS personnel officer, Troy recommended plaintiff's removal from the service. (Def. Ex. R at 10, "Letter Recommending Termination Dated Dec. 4, 2002.") On February 20, 2002, Troy notified plaintiff of her proposed termination on the basis that she breached the INS's drug-free workplace policy. (Def. Rule 56.1 Stmt. ¶ 37.)

On March 22, 2002, plaintiff's attorney submitted a letter to Gantner challenging the validity of the drug test results and the proposed termination. (Pl. Rule 56.1 Stmt. ¶ 10.) Plaintiff's attorney submitted a second letter to Gantner on May 7, 2002, indicating that plaintiff took a hair test to detect cocaine use, and the results of the test were negative. (See Def. Ex. U, "Letter to Gantner Dated May 7, 2002.") Plaintiff never submitted a lab report verifying the range of time the hair test covered or documentation of the lab's credentials.[4] (Def. Rule 56.1

---

[4] Plaintiff alleges, without any support, that the hair test covered a period of fourteen months prior to the test. (See Letter to Gantner Dated May 7, 2002 at 1.)

Stmt. ¶¶ 40-41) By letter dated July 31, 2002, Gantner notified plaintiff of her termination. (Def. Rule 56.1 Stmt. ¶ 42.)

**D.      EEO Counseling and Complaint**

On December 28, 2001, plaintiff requested an appointment for EEO counseling, alleging discrimination on the basis of mental disability and retaliation based on prior EEO activity. (See Def. Ex. EE at 1, "Notice of Right to File Complaint of Discrimination.") She had her initial interview with an EEO counselor on January 31, 2002. (Id.) During the interview, she specifically indicated that Mirandona's comments about the status of her employment was, in part, the basis for her complaint. (Id.) In a letter dated February 25, 2002, the EEOC gave plaintiff permission to file an EEO complaint within fifteen calendar days of the letter's receipt. (Id.)

On March 12, 2002, plaintiff filed a timely EEO complaint alleging discrimination on the basis of disability and reprisal for her termination from her position as an inspector. (See Def. Rule 56.1 Stmt. ¶ 58.) After her termination, the EEOC amended plaintiff's EEO complaint to specifically include her termination. (See Def. Ex. HH at 1, "Letter Amending Complaint Dated Aug. 20, 2002"; Def. Ex. GG at 1, "Letter Requesting Amendment of Complaint Dated Aug. 2, 2002.") The EEOC apparently denied plaintiff relief.[5] (See Def. Rule 56.1 Stmt. ¶ 62.)

The instant action was timely filed in this court on October 24, 2003 and arises under Title VII of the Civil Rights Act of 1964.

**DISCUSSION**

---

[5] Defendant specifies that the EEOC denied plaintiff relief because it concluded that she failed to establish a claim for retaliation. (See Def. Mem. at 8.) However, a copy of the agency's final decision is not in the record.

## A. Summary Judgment Standard and Title VII Requirements

Summary judgment shall be granted if the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists if the evidence is such that a reasonable jury could find in favor of the non-moving party. Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). The moving party bears the burden of establishing the absence of any genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In deciding a summary judgment motion, the court must "resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion." Cifarelli v. Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

To determine which facts are material, the court must look to the substantive law that supplies the basis for the claims at issue. See Anderson, 477 U.S. at 248. In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court provided the framework to evaluate a claim under Title VII. First, the plaintiff must make out a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004); accord McDonnell Douglas, 411 U.S. at 802. For a claim of retaliation, the plaintiff's prima facie case must show that (1) she participated in a protected activity about which defendant was aware; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected

9

activity and the adverse employment action. See Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004).

After plaintiff has made the required prima facie showing, a presumption of discrimination is created and the burden of production shifts to the defendant, who must then offer "evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). The determination whether or not the defendant has met this burden "can involve no credibility assessment." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993). After the defendant produces evidence of a non-discriminatory reason for its actions, the McDonnell Douglas presumption disappears, and all that remains is the ultimate burden of persuasion which must at all times be born by the plaintiff. Id. at 510-11. To avoid summary judgment the plaintiff must then present sufficient evidence for a reasonable fact finder to conclude that the defendant's purported explanation is merely a pretext, and that intentional discrimination was actually a factor in defendant's actions. Reeves, 530 U.S. at 143.

**B.      Plaintiff's Claims**

1)      Discrimination on the Basis of Sex and Race

Plaintiff alleges that defendant discriminated against her on the basis of her sex and race by terminating her due to her failure to pass a random drug test while permitting white males to continue working at the INS in spite of their illegal behavior. Defendant argues that the court should dismiss plaintiff's sex and race discrimination claims as unexhausted because she failed to raise these claims in her EEO complaint. After reviewing the record, the court concludes that plaintiff's discrimination claims are not reasonably related to the retaliation claim she asserts in

her EEO complaint. Consequently, the court dismisses plaintiff's discrimination claims as unexhausted.

A Title VII claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter. See 42 U.S.C. § 2000e-5(e)-(f); Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001); Shah v. New York State Dep't of Civil Serv., 168 F.3d 610, 613 (2d Cir. 1999). The purpose of this exhaustion requirement is to provide notice to the employer and to encourage conciliation and voluntary compliance. See Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993); Snell v. Suffolk Cty., 782 F.2d 1094, 1101 (2d Cir.1986). However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related to those that were filed with the agency.'" Shah, 168 F.3d at 614. Conduct alleged in a complaint is "reasonably related" to conduct described in an EEOC charge in three instances: (1) if it is within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) if it would constitute retaliation for filing a timely EEOC charge; or (3) if it constitutes further incidents of discrimination perpetrated in precisely the same manner as alleged in the EEOC charge. Butts, 990 F.2d at 1402-03.

Plaintiff's EEO counselor, Amanda G. Ferland, recognized that plaintiff alleged only discrimination on the basis of disability and retaliation in her letter granting plaintiff the right to file an EEO complaint. (See Notice of Right to File a Complaint of Discrimination at 1.) In her EEO complaint, plaintiff alleged only discrimination on the basis of disability and reprisal for prior EEO activity. (Def. Ex. FF, "EEO Complaint Dated Mar. 12, 2002.") Moreover, when

11

plaintiff requested that the EEOC amend her complaint, plaintiff failed to mention any allegations of sex or race discrimination and solely characterized her claim as one based on retaliation. (See Letter Requesting Amendment of Complaint Dated Aug. 2, 2002 at 1.) Thus, even when given the opportunity to amend her complaint, plaintiff failed to request an amendment to include claims of sex and race discrimination or make any allegations with regard to sex or race discrimination. The EEOC's letter accepting plaintiff's amendment indicates that plaintiff claims discrimination on the basis of disability and retaliation for prior EEO activity. (See Letter Amending Complaint Dated Aug. 20, 2002 at 1.)

After reviewing the record, the court concludes that plaintiff's sex and race discrimination claims are not reasonably related to the claims raised in her EEO complaint. Plaintiff's new claims are neither retaliation claims nor are they further claims of discrimination conducted in the same manner as the disability and retaliation claims charged in the EEO complaint. Thus, plaintiff's new claims clearly do not fit within the second or third definitions of "reasonably related" described above. Moreover, plaintiff's new claims were not within the scope of the EEOC's investigation of plaintiff's retaliation and disability claims. Nothing in the record indicates that the EEOC was on notice that plaintiff had sex and race discrimination claims. Indeed, plaintiff's communication and correspondence with the EEOC focuses solely on her claims that she was discriminated against on the basis of her disability and that she was retaliated against for engaging in prior EEO activity. Thus, the court concludes that plaintiff's sex and race discrimination claims are not reasonably related to the claims charged in her EEO complaint.

Given that plaintiff failed to raise her sex and race discrimination claims before the EEOC and that they are not reasonably related to the claims raised before the EEOC, they are

in the light most favorable to plaintiff, the court agrees that plaintiff cannot establish a prima facie showing of retaliation with respect to the OCORS score.

It is undisputed that plaintiff has met the first prong of establishing a prima facie case of retaliation. Defendant has not denied that Austin knew about plaintiff's prior EEO activities. However, even assuming arguendo that plaintiff could establish that she suffered from an adverse employment action due to the low OCORS score given by Austin, plaintiff cannot establish that her failure to be promoted is causally connected to plaintiff's prior EEO activity. Plaintiff has put forth no evidence indicating that Austin gave her a low OCORS score due to her prior EEO activity, much less even had an interest in plaintiff's prior EEO activity. Plaintiff argues that the fact that she had received perfect OCORS scores on prior occasions from different supervisors indicates that there was a causal connection between Austin's low score and her prior EEO activity. She also claims that Austin was not the proper supervisor to rate her because he had not observed her work for that period. However, plaintiff has put forth no evidence supporting her claim that Austin was not her second-line supervisor at the time of the OCORS evaluation at issue. Viewing the evidence in the light most favorable to plaintiff, plaintiff has showed, at most, that Austin was aware of plaintiff's prior EEO activity and gave her a lower OCORS score than she had received from different supervisors at different times during her career. Based on this record, the court concludes that no reasonable trier of fact could conclude that there was a causal connection between plaintiff's prior EEO activity and the low OCORS score given by Austin.

Given that plaintiff has failed to put forth sufficient evidence to establish a causal connection between her protected activity and the allegedly adverse employment action, plaintiff

14

cannot make out a prima facie case of retaliation with respect to OCORS score. Accordingly, defendant's motion for summary judgment on this point is granted.

4)    Plaintiff's Termination Based on Her Positive Drug Test

Plaintiff alleges that defendant retaliated against her for engaging in prior EEOC activity by terminating her over a year after she failed a random drug test. Defendant argues that plaintiff has failed to establish a prima facie case of retaliation with respect to her termination because she cannot establish a causal connection between her prior EEO activity and her termination. Defendant further argues that plaintiff cannot rebut defendant's legitimate business reason for terminating plaintiff—her violation of the INS's drug-free workplace policy—and, thus, cannot meet her burden of showing that the termination of plaintiff based on her drug test was pretextual. After reviewing the record in the light most favorable to plaintiff, the court concludes that plaintiff can establish a prima facie case of retaliation and has put forth sufficient evidence to create the inference that the INS's decision to terminate plaintiff based on her drug test was pretextual.

Here, it is undisputed that plaintiff has satisfied the first two elements of a prima facie case of retaliation. The third element of establishing a causal connection between the protected activity and the adverse employment action is at issue here. Defendant argues that plaintiff cannot establish a causal connection because her termination was too remote in time from her prior EEO activity and that there is no evidence that similarly situated employees were treated any differently than plaintiff. Contrary to defendant's contentions, a reasonable juror could certainly find that there was causal connection between plaintiff's prior EEO activity and her termination. As an initial matter, the record shows that plaintiff's EEO proceedings with respect

15

to her hostile work environment claim continued until the she was issued a damages award on

April 30, 2001. (See Def. Ex. E, "Damages Award Dated Apr. 30, 2001.") The court rejects

defendant's argument that this EEO complaint is not in close temporal proximity to plaintiff's

termination because her complaint was initiated in 1996. Plaintiff continued to engage in

protected activity by seeking compensatory damages for her hostile work environment claim. In

any event, the record shows that the EEOC held the INS liable for the hostile work environment

claim, in major part, because Mirandona—who played a significant role in the decision to

terminate plaintiff—failed to responsibly investigate plaintiff's sexual assault claim.[6] Viewing

the record in the light most favorable to plaintiff, the court concludes that a reasonable trier-of-

fact could conclude that there was a causal connection between plaintiff's hostile work

environment claim, which Mirandona failed to investigate in a timely manner, and her eventual

termination based, in part, on Mirandona's recommendation.

With the prima facie elements satisfied, the burden of production now shifts to the

defendant to rebut a presumption of retaliation. Defendant claims that its legitimate business

reason for terminating plaintiff is that she failed a mandatory, random drug test, thus violating the

INS's drug-free work policy. It is undisputed that INS instituted a drug-free workplace program

that includes random drug tests for certain employees and that plaintiff was tested pursuant to

this procedure on May 14, 2001. In support of its claim that plaintiff failed this drug test,

---

[6] The agency's final decision states that Mirandona learned of plaintiff's sexual harassment episode and her desire to file a formal complaint soon after the incident, but did not conduct a proper administrative investigation until five months after the harassment. (EEOC Final Decision on 1996 Complaint at 7). As a result, the agency held that "INS's slow investigative response and subsequent, very limited corrective action, do not satisfy Burlington/Faragher's standard for INS to escape liability." (Id.)

defendant has submitted certified reports from the MRO and the laboratory showing that plaintiff tested positive for cocaine metabolite. (See Def. Ex. L, "Greystone Health Sciences Report;" Def. Ex. N, "Northwest Toxicology Urinalysis Drug Testing Report.") In her letter notifying plaintiff of her termination, Gantner specified that the reason for plaintiff's termination was her use of an illegal drug. (Def. Ex. V at 1, "Termination Letter Dated July 31, 2002.") Defendant's evidence shows that plaintiff tested positive for an illegal substance, and that this was the stated reason for the termination.

In response, plaintiff contends that defendant's legitimate business reason is in fact pretextual because the drug test itself was invalid due to procedural irregularities. Plaintiff claims that the INS failed to follow its own guidelines with respect to the drug testing procedures by (1) falsifying plaintiff's drug test; (2) failing to notify plaintiff promptly in writing of the results; (3) failing to notify plaintiff that she had a right to a split specimen and the right to have her specimen retested; (4) failing to properly complete the chain of custody forms related to plaintiff's specimen; (5) failing to permit plaintiff to retest the specimen; (6) failing to preserve plaintiff's specimen after learning that it was under legal contention; (7) failing to accept the results of plaintiff's hair test.

Several of plaintiff's claims are simply not supported by the record. While the record shows that plaintiff passed all of her drug tests during her rehabilitation program and passed a hair test, plaintiff has put forth no evidence, aside from her conclusory allegations, showing that the INS drug test was falsified. In addition, plaintiff's claim that the chain of custody forms were not correctly filled out is also baseless. For example, as defendant correctly points out, plaintiff cites to poor copies of the original chain of custody records to support her argument that the her

17

specimen was never clearly marked as a split or single specimen. Defendant's exhibits are clear copies of all the chain of custody records and do not appear to contain any material errors. Plaintiff cannot create an issue of fact with regard to the chain of custody of her specimen by citing to poor copies of documents in the record. The court also summarily rejects plaintiff's arguments that the INS violated its own policy by failing to provide prompt notice in writing of the results of her drug test and by refusing to accept the results of her hair test. Neither the INS nor the HHS policies require that prompt notice be given in writing or that the INS is required to accept the results of a test not given by its own certified laboratories.

Plaintiff's remaining claims of procedural irregularities are, in fact, supported by the record. First, plaintiff claims that the MRO never informed her of her right to request a split sample to obtain retesting of her specimen. At her deposition, plaintiff testified that a representative of the MRO called her and merely told her that her test came back positive. (Pl. Dep. at 87-88.) Defendant has put forth evidence indicating that the representative noted on the "Positive Drug Test Interview Form" that he had notified plaintiff of the option of requesting a split specimen within seventy-two hours and a retest. (Def. Ex. L at 7, "Positive Drug Test Interview Form Dated May 24, 2001.") Thus, there is clearly a material issue of fact as to whether the MRO failed to inform plaintiff of her option to request a split specimen and a retest. Defendant argues that the MRO is an independent contractor and, therefore, any procedural irregularities or administrative errors committed by the MRO cannot be attributed to the INS. Even assuming that this is the case, the court concludes that defendant's argument is unavailing. Although the MRO may in fact be solely responsible for the drug testing procedures, the INS's

failure to investigate her claim that she was not notified of retesting procedures may in fact support an inference of retaliatory intent.

More importantly, plaintiff's claim that her specimen was prematurely destroyed is supported by the record and may support an inference of retaliatory intent. As explained earlier, HHS policy dictates that a urine sample must be kept indefinitely if under legal challenge. (See HHS Mandatory Guidelines for Federal Workplace Drug Testing Programs at 30.) On March 12, 2002, plaintiff filed an EEO complaint specifically alleging that the plaintiff's drug test was not random and that mandatory guidelines related to the drug testing procedure were not followed. (See EEO Complaint Dated Mar. 12,2002.) In addition, on March 22, 2002, plaintiff's attorney notified Gantner at the INS that her client was contesting the drug test results. (See Def. Ex. T, "Letter to Gantner Dated Mar. 22, 2002.") Plaintiff's attorney sent a second letter to Gantner, notifying her of plaintiff's hair test results, on May 7, 2002. (See Letter to Gantner Dated May 7, 2002.) Nonetheless, plaintiff's sample was destroyed on August 14, 2002. (See Northwest Toxicology Urinalysis Drug Testing Report at 5546.)

Defendant fails to present any evidence showing that the INS informed the laboratory that plaintiff's specimen was under legal challenge. In fact, defendant does not deny that the specimen was destroyed in spite of being under legal challenge. Rather, defendant argues that plaintiff's specimen was destroyed after she was terminated and, therefore, it has no relevance to whether defendant's stated reasons for terminating plaintiff are pretextual. Defendant misunderstands the relevance of the INS's failure to preserve the specimen. The HHS policy appears to impose an affirmative obligation on the INS to ensure that the laboratory continues to store specimens that are under legal challenge. Here, plaintiff filed an EEO complaint, and

19

plaintiff's attorney notified the INS on two occasions that she was challenging the validity of the test results. However, the record shows that nothing was done to ensure that the specimen was available for retesting. Viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in her favor, the court concludes that a reasonable juror could find that the INS's failure to investigate procedural irregularities and notify the laboratory that the specimen needed to be preserved supports an inference of retaliatory intent.

In addition, the record also shows that over a year elapsed between plaintiff's failed drug test and her termination. (See Termination Letter Dated July 31, 2002.) During the interim, plaintiff was demoted to a clerical position. (See Notification of Drug Test Result Dated June 1, 2001; Pl. Dep. at 91-92.) Also during this time, plaintiff successfully completed a rehabilitation program and passed every drug test given to her. (See Second Wind Letter to Mirandona Dated Nov. 16, 2001.) The results of her successful completion of the program were relayed to Mirandona, (see id.), who was her supervisor whose conduct was directly criticized in the final agency decision on plaintiff's 1996 hostile work environment complaint. (See EEOC Final Decision on 1996 Complaint at 7.) By then, Mirandona had already recommended disciplinary action against plaintiff. (Letter Recommending Disciplinary Action Dated July 24, 2001.) Several weeks later, plaintiff sought EEO counseling because Mirandona told plaintiff, in a manner that she found degrading, that she would never get her inspector position back. (See EEO Complaint Dated Mar. 12, 2002.) On that same day, Troy sent a letter to the INS's personnel department recommending plaintiff's termination. (See Letter Recommending Termination Dated Dec. 4, 2002.) Viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in her favor, the court concludes that a reasonable juror

could find that the delay between plaintiff's test results and her termination, combined with Mirandona's direct involvement in the decision to terminate plaintiff supports an inference of retaliatory intent.

In sum, the evidence of procedural irregularities, the long delay between plaintiff's test results and her termination, and Mirandona's signficant participation in the decision to terminate plaintiff is sufficient evidence for a reasonable fact finder to conclude that defendant's purported explanation for plaintiff's termination is merely a pretext, and that retaliation was actually a factor in defendant's actions. See Wilds v. United States Post Master General, 989 F. Supp. 178, 185-86 (D. Conn. 1997) (holding that the delay between drug test results and termination, procedural irregularities with the test, failure to permit plaintiff to retest his specimen, and evidence that plaintiff was treated differently from others was sufficient to create inference of discrimination). Accordingly, defendant's motion for summary judgment with respect to this claim is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in part and denied in part. Specifically, the court grants defendant's motion for summary judgment on plaintiff's disability, gender, and race discrimination claims and plaintiff's retaliation claims with respect to the suspension and the OCORS score. The court denies defendant's motion for summary judgment with respect to plaintiff's termination on the basis of her drug test.

SO ORDERED.

Allyne R. Ross

_____
Allyne R. Ross
United States District Judge

Dated: July 21, 2006
        Brooklyn, New York

22

SERVICE LIST:

Attorney for Plaintiff
Pamela D. Hayes
501 Fifth Avenue
Suite 2202
New York, NY 10017

Attorney for Defendant
Denise McGinn
United States Attorneys Office, EDNY
Central Islip Courthouse
610 Federal Plaza
Central Islip, NY 11722

cc: Magistrate Judge Robert M. Levy